UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WORLDHOMECENTER.COM, INC.,

                              Plaintiff,        **MEMORANDUM AND ORDER**
                                                  08-CV-020 (DRH)(ETB)

   v.

L.D. KICHLER CO., INC.,
d/b/a KICHLER LIGHTING,

                              Defendant.

-------------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiff:**
**LAWRENCE R. LONERGAN, P.C.**
272 Seventh Avenue, 25th Floor
New York, New York 10001
By: Lawrence R. Lonergan, Esq.

**For the Defendant:**
**CALFEE, HALTER & GRISWOLD LLP**
1400 KeyBank Center
800 Superior Avenue
Cleveland, Ohio 441148
By: John J. Eklund, Esq.
     David A. Ruiz, Esq.

**HURLEY, Senior District Judge:**

      Defendant L.D. Kichler Co., Inc. d/b/a Kichler Lighting ("Defendant" or "Kichler") moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). In its complaint, Worldhomecenter.com, Inc. ("Plaintiff") seeks damages for Kichler's alleged violation of New York General Business Law ("GBL") § 369-a. For the reasons that follow,

Defendant's motion is granted.

### *Background*

The following summary of facts is taken from the Complaint.

Plaintiff is an online retailer of home improvement products, selling to and servicing customers exclusively through its web site, known as "HomeCenter.com." Defendant manufactures and sells lighting products exclusively to its authorized dealers.

Plaintiff purchases Kichler products for value from both exclusive and independent distributors for online resale to Plaintiff's customers. (Compl. ¶ 8.) Because of the relatively low overhead and maintenance associated with on-line retailing, and because Plaintiff purchases a high volume of products from distributors, Plaintiff alleges that it is able to sell genuine Kichler products to consumers at sharp discounts compared to identical products offered for sale by traditional display room retailers. (*Id.*)

Plaintiff has resold Kichler products over the Internet for several years without incident or complaint. On February 1, 2005, however, Defendant initiated an Internet Minimum Advertised Price ("IMAP") policy that is the basis for the present litigation. That policy provides in pertinent part:

> Kichler Lighting ("Kichler") has unilaterally adopted this Policy applicable to all Kichler customers effective February 1, 2005 with respect to the customer's advertising over the Internet of products supplied by Kichler.
>
> 1. Each Kichler customer remains free to establish its own resale prices. However, a customer may not A) advertise or otherwise promote Kichler Products over the Internet at a net price less than the Internet Minimum Advertised Price ("IMAP") Kichler establishes from time to time or B) sell Kichler Products to any other person who advertises or otherwise promotes Kichler

products over the Internet at a net price less than the IMAP Kichler establishes from time to time. The initial IMAP Kichler has established is 1.8 times Distributor net price.

2. If a customer violates the policy, Kichler will withdraw from the customer all rights to sell, display or list Kichler Products on the World Wide Web for a period of six (6) months, and the customer will cease all sales, displays and listings within (30) days from the date of Kichler's notice to that effect.

(Compl. ¶ 13 & Ex. A.). Plaintiff received Kichler's "THIRD AND FINAL NOTICE" advising its customers of potential penalties should any distributor fail to abide the IMAP policy. The notice provides as follows:

> Dear Valued Customer:
>
> Once again we are writing to inform you of a new policy from Kichler that will become *effective February 1, 2005*. We are instituting an Internet Minimum Advertised Price (I.M.A.P.) policy to help our dealers compete with companies that advertise our products at reduced prices on the web.
>
> Due to the growth of the Internet channel of commerce, we are seeing more and more of our distributors losing sales to these low price Internet web sites. Our showrooms and electrical distributors make Kichler what it is today. We recognize the substantial financial investment you have made on our product line. With that investment in mind, it's just not possible to compete with the prices now being advertised on some Internet sites. Therefore we have created this policy to help protect our distributors, allow you to be competitive on the web, and to maintain the integrity of the Kichler line.
>
> We'd like to reiterate one more time the responsibilities of our distributors that supply 3rd party websites. You, the dealer, must only supply web businesses that comply with Kichler's I.M.A.P. policy. If a distributor is found supplying a web site that does not comply with the policy, that distributor will suffer the consequences that are outlined in the policy. We are very serious about the enforcement of this policy, and would like to avoid any surprises.

(*Id.* ¶13 & Ex. B.)

This notice, together with the IMAP policy, serve as the basis for the present suit. According to the Complaint, "In keeping with its IMAP program, Kichler has refused to ship and fill orders submitted by Plaintiff unless and until Plaintiff complies with the IMAP policy" and that refusal is "based upon Plaintiff's refusal to agree to sell Kichler's products at fixed prices (*Id.* ¶ 14, 15. ) Plaintiff further contends that "Kichler's IMAP policy sets minimum resale prices and constitutes vertical price fixing." (*Id.* at ¶ 16.)

Plaintiff filed the present Complaint in New York Supreme Court, Nassau County, and it was thereafter removed to this Court on January 3, 2008. The sole cause of action alleged in the complaint is that Defendant's IMAP policy violates § 369-a of the GBL. Defendant moves to dismiss arguing that Plaintiff is not entitled to damages under § 369-a because it provides no private right of action and Plaintiff does not have standing to sue under the statute.

### *Rule 12(c) Standard*

A motion for judgment on the pleadings pursuant to Rule 12(c) is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Nicholas v. Goord,* 430 F.3d 652, 658 n. 8 (2d Cir. 2005). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard applicable in evaluating a motion to dismiss under Rule 12(b)(6) and disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. Instead, to survive a motion to dismiss under

*Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, *Twombly* "'require[s] enough facts to 'nudge[plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974)). Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007). As always, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

*Discussion*

Section 369-a of the General Business Law is entitled "Price-fixing prohibited" and provides:

> Any contract that purports to restrain a vendee of a commodity from reselling such commodity at less than the price stipulated by the vendor or producer shall not be enforceable or actionable at law.

N.Y. Gen'l Bus. § 369-a. Defendant maintains that there is no private cause of action for damages under the statute and that even if there is Plaintiff lacks standing to assert any claim. Plaintiff retorts that the statute is intended to prevent a manufacturer from fixing price and to preclude Plaintiff from suing thereunder would render the statute meaningless.

On its face, § 369-a does not provide for a private cause of action. Moreover, the parties do not cite, and the Court has not found, any express provision allowing for a cause of action for damages for violation of the statute. Under New York law, where a statute does not provide for an express cause of action, courts will, under certain circumstances, imply a private cause of action. *See, e.g., Goldman v. Simon Property Group, Inc.*, 58 A.D.3d 208, 869 N.Y.S.2d 125, 131 (2d Dept. 2008) ("When . . . a statute does not provide an express private right of action, the courts will imply a private right of action only upon an examination of the following three factors: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.") (internal quotations omitted); *accord Carrier v. Salvation Army*, 88 N.Y.2d 298, 302, 644 N.Y.S.2d 678 (1996); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314,

325, 464 N.Y.S.2d 712, 716 (1983).

Neither party in the present case satisfactorily addresses the factors for implying a private cause of action. The Court finds it unnecessary so do so because, as set forth below, it concludes that, assuming *arguendo* that a private cause of action exists for damages under GBL § 369-a, plaintiff's claim is subject to dismissal.

By its terms, the statute prohibits the enforcement of any "contract" prohibiting a vendee from selling below a stipulated price. No contract is alleged in this case. Rather, the complaint only alleges a refusal "to ship and fill orders submitted by Plaintiff."

Plaintiff's reliance on *Carl Wagner and Sons v. Appendagez, Inc.*, 485 F. Supp. 762 (S.D.N.Y. 1980) as support for the proposition that Kichler's refusal to accept orders from companies that are not in compliance with its IMAP policy violates GBL § 369-a is misplaced. In *Carl Wagner*, the court did in fact find the existence of a contract between the parties. As the *Carl Wagner* stated "Appendagez's threshold contention is that the purchase orders did not give rise to binding contracts until they were accepted for shipment at the Appendagez offices in Norwood. If no contractual obligations came into existence unless and until Appendagez accepted the purchase orders . . . then of course the case is at an end since . . . no contractual relationships came into existence." *Id.* at 769. The court then proceeded to determine that in fact the purchase orders gave rise to a contract because the salesman, sent by the defendant to Carl Wagner, given the attendant circumstances had apparent authority to bind the corporation. *Id.* at 770-72. Here, in contrast, there are no allegations in the complaint that Plaintiff's submission of orders resulted in a contract between it and Defendant. Rather, the complaint solely alleges a prior course of dealing between Plaintiff with "exclusive and independent

7

distributors" of Defendant.[1]

Nor is the Court persuaded by Plaintiff's course of dealing argument. There is no direct course of dealing in the complaint alleged as between Plaintiff and Defendant. Rather, the complaint alleges that Plaintiff purchased Defendant's products "from both exclusive and independent distributors . . . ." (Compl. ¶ 8.)

Finally, the Court is underwhelmed by Plaintiff's argument that the statute would be rendered useless for lack of an enforcement mechanism if claims such as Plaintiff's were not permitted to proceed. First, it appears that GBL § 369-a could be enforced by the Attorney General of the State of New York pursuant to New York Executive Law § 63(12). Section 63(12) provides:

> Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, and the court may award the relief applied for or so much thereof as it may deem proper. The word "fraud" or "fraudulent" as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or *unconscionable contractual provisions*. The term "persistent fraud"

---

[1] The Court also notes that in *Carl Wagner*, GBL §369-a did not serve as an independent basis for damages. The defendant in *Carl Wagner* sought to justify its refusal to ship to the plaintiff on the ground that plaintiff had violated a minimum resale price agreement. The Court rejected that defense, holding that a contrary conclusion would be tantamount to enforcing a contract provision contrary to § 369-a. 485 F. Supp. at 772.

> or "illegality" as used herein shall include continuance or carrying
> on of any fraudulent or illegal act or conduct. The term "repeated"
> as used herein shall include repetition of any separate and distinct
> fraudulent or illegal act, or conduct which affects more than one person.

N.Y. Exec. Law § 63(12) (emphasis added). Second, distributors who have a contractual relationship with Defendant could seek, in effect, to enforce the prohibition in GBL § 369-a as the plaintiff did in *Carl Wagner*. Moreover, it si not clear that Plaintiff is not left without a remedy under New York law. To the extent that Defendant's IMAP policy constitutes illegal price-fixing, Plaintiff may assert such a claim pursuant to New York's Donnelly Act, Gen'l Bus. Law § 340.[2]

### *Conclusion*

For the foregoing reasons, Defendant's motion to dismiss the Complaint is granted.

**SO ORDERED**

Dated: Central Islip, NY
March 31, 2009

/s_____
Denis R. Hurley,
United States District Judge

---

[2] Indeed, Plaintiff has commenced an action against Defendant seeking damages under both the Sherman Act, 15 U.S.C. § 1, and the Donnelly Act, N.Y. Gen'l Bus. Law § 340. *See Worldhomecenter.com, Inc. v. L.D. Kichler Co., Inc.*, Civil Action No. 05-3297 (E.D.N.Y.).